IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JOHN MARTIN POSTON,            )
                               )
    Plaintiff,                 )
                               )
v.                             )    Case No. 3:18-cv-878-WC
                               )
ANDREW SAUL, Commissioner of   )
Social Security,[1]            )
                               )
    Defendant.                 )

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Plaintiff John Martin Poston ("Poston") filed this action on October 12, 2018, seeking judicial review of the Commissioner of Social Security's final decision denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income benefits ("SSI") under Title XVI of the Act. Poston filed his DIB and SSI applications on December 19, 2014, alleging a disability onset date of September 18, 2014. R. 275, 276. The applications were denied at the initial administrative level, following which Poston requested and received a hearing before an Administrative Law Judge ("ALJ"). R.11. On August 17, 2017, the ALJ issued an unfavorable decision, and the Appeals Council denied Poston's request for review of that decision on September 4, 2018. R 1–7, 8–28. The ALJ's decision consequently

---

[1] Andrew Saul is now the Commission of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Proc. 25(d). See also § 205(g) of the Social Security, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

became the Commissioner's final decision. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). This court has jurisdiction over Poston's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Docs. 19 and 20.

The undersigned has considered the parties' briefs and all the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing

*Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to do the following:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security uses a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

(1) Is the person currently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any question leads either to the next question or, on Steps 3 and 5, to a finding of disability. A negative answer to any question except Step 3 leads to a determination of not disabled. *McDaniel v. Bowen,* 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

5

To perform Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43. At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "disabled" or "not disabled." *Id.*

## IV. ADMINISTRATIVE PROCEEDINGS

Poston was born on February 20, 1965. R. 234. He completed high school and two years of college. R. 454. He has worked as a quality control technician, a high voltage power technician, a solar panel installer, and a quality control supervisor. R. 239, 241, 244–45, 247. After the administrative hearing, the ALJ determined that Poston met the insured status requirements of the Act through March 30, 2020. R. 13. At the first step of the five-step sequential process, the ALJ found that Poston had not engaged in substantial gainful activity since his alleged disability onset date of September 8, 2014. R. 13. At the second step, the ALJ found that Poston suffered from the severe impairments of bipolar disorder,

6

depression, and panic disorder. R. 13. The ALJ noted that Poston had been treated for hypertension and diabetes, was obese, and had been diagnosed with hypercholesterolemia and hyperglyceridemia, but he found the impairments caused by those conditions were not severe. R. 14.

At the third step of the process, the ALJ found that Poston's impairments were not equivalent to any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Specifically, the ALJ found that Poston's impairments did not meet listings 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders), each of which requires satisfaction of the listing's Paragraph A and satisfaction of the listing's Paragraph B or C. Paragraph C requires that mental impairments be "serious and persistent," requiring that the record contain (i) medically documented evidence that the disorder has persisted at least two years; (ii) evidence that the claimant relies on an ongoing basis upon medical treatment, mental health therapy, psychosocial support, or a highly structured setting to control symptoms; and (iii) evidence of marginal adjustment, specifically evidence that the claimant's adaptation to the requirements of daily life is fragile, with minimal capacity to adapt to environmental changes or to novel demands. The ALJ determined that the record established that Poston did well on medications, demonstrated a stable mood, could manage his stressors, used strategies to deal with events beyond his control, and, therefore, did not present the requisite marginal adjustment. R. 15.

Because the ALJ found that Poston's impairments did not meet any of the listings, the ALJ conducted an assessment of Poston's residual functional capacity, which he articulated as follows:

> [Poston] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: perform unskilled, simple, routine, and repetitive tasks, but not at production rate; tolerate no more than occasional contact with supervisors and coworkers; never engage in team or tandem work; no contact with the public with respect to performing work-related duties; cannot work in hazardous environments, such as around dangerous machinery; occasionally climb ramps and stairs; and never climb ladders, ropes, an scaffolds or similar devices.

R. 16. In reaching these findings, the ALJ considered the material objective medical evidence and Poston's own statements regarding his symptoms. R. 15–20.

At the fourth step of the five-step process, the ALJ found that Poston was unable to perform his past relevant work. R. 21.

At the fifth step, the ALJ found, in light of Poston's age, education, work experience, and RFC, that there were jobs existing in significant numbers in the national and local economy that he could perform. R. 22. Specifically, the ALJ found, in partial reliance on the testimonial opinion of a vocational expert, that Poston could perform the requirements of representative unskilled occupations such as janitor, mail room clerk, housekeeper, and laundry worker. R. 22. The ALJ concluded that Poston was not disabled as defined in the Act at any time between September 8, 2014, and the date of the final decision. R. 23.

V. **PLAINTIFF'S CLAIMS**

Poston argues that the ALJ erred in finding that his impairments do not meet the Paragraph C requirements of Listings 12.04 and 1206 of 20 C.F.R. § 404, subpt. P, app. 1. He also argues that the hypothetical question posed to the VE failed to comprise all of the claimant's impairments. Finally, he argues that the ALJ failed to properly evaluate the

medical opinions of three of Plaintiff's treatment providers: Minnie Harrell, a therapist; Jay Scott Stewart, a consultative examining physician; and Dr. Bradley Carden, Poston's treating physician.

## VI. ANALYSIS

### (A) The ALJ's Evaluation of Poston's Treating Physician

Poston argues in his brief that the ALJ failed to give controlling weight to the medical opinion of his treating physician, Dr. Bradley Lamar Carden. Doc. 18 at 41. The Commissioner asserts that this argument is without merit because the ALJ's decision is supported by substantial evidence. Doc. 21 at 13.

The medical record establishes that Dr. Carden treated Poston from January 2016 through December 2017 for physical conditions such as high blood pressure and dermatitis. R. 700–04, 793–808. However, he also prescribed psychotropic medications for Poston. *Id.* In May 2017, one and a half years after he began treating Poston, Dr. Carden provided his opinion regarding Poston's mental work limitations. R. 846–47. Specifically, he opined that Poston was extremely impaired in his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual; his ability to work in coordination with others; his ability to accept instructions and respond appropriately to criticism from supervisors; and his ability to set realistic goals or make plans independently of others. R. 846–47. Dr. Carden opined that Poston was markedly impaired in his ability to understand and remember instructions; his ability to carry out detailed instructions; his ability to interact appropriately with the general public; his ability to get along with co-workers and peers; and his ability to respond

9

appropriately to changes in the work setting. R. 846–47. In his decision, the ALJ discussed the details of Dr. Carden's opinion, but he assigned little weight to the opinion because it was inconsistent with the overall medical evidence of record (stating specifically that nothing in the record showed that Poston was extremely limited in any area). R. 20. However, the ALJ described the opinion as being from a physician "whose signature is illegible."[2] R. 20. Clearly, then, the ALJ did not realize the opinion had been provided by Poston's treating physician.

In *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 (11th Cir. 2011), the ALJ misread the signature of the treating psychiatrist on a response to questions regarding the claimant's symptoms and did not realize that certain treatment notes were completed by the treating physician. As a result, the ALJ only briefly mentioned the treatment notes and found the interrogatory responses unpersuasive. *Id.* The Court stated:

> It is clear from this finding that the ALJ did not give [the treating physician's] opinion controlling weight. However, it is not clear from the record whether the ALJ would have come to the same conclusion had he understood that [he] was the treating psychiatrist and that [he] had also completed the treatment notes. Because we cannot "substitute our judgment for that of the Commissioner," we remand the case for further factual findings. The ALJ should explicitly reconsider [the treating physician's] opinion in light of his treatment notes, the record as a whole, and his position as [claimant's] treating psychiatrist. If the ALJ declines to accord [the] opinion controlling weight, he must provide "good reasons" for his decision.

*Id.* (citations omitted). *See also Davis v. Astrue*, No. 5:09-CV-283 MTT, 2012 WL 1856501, at *1 (M.D. Ga. May 21, 2012) (stating, upon consideration of a motion for

---

[2] The Court notes that the signature is somewhat illegible; however, the printed name of "B. Lamar Carden" is legible under the signature. R. 847.

attorney's fees, that "The Commissioner cannot be substantially justified in defending the ALJ's decision because the ALJ's decision did not comply with the required legal standards. A treating physician's opinion must be given substantial or considerable weight. Of course, the ALJ could not have given [the treating physician's] opinion the proper weight because the ALJ did not realize [he] was the treating physician. This was in error, and the Commissioner was not substantially justified in his decision to deny the Claimant's disability benefits.")

In this case, it is not clear from the record whether the ALJ would have reached the same conclusions if he had understood that Poston's treating physician had completed the medical statement concerning Poston's mental health condition. Additionally, the consulting psychologist in this case opined that Poston lacked the ability to handle day-today pressures of a work environment. R. 685. The ALJ assigned this opinion partial weight because he did not feel it was supported by Dr. Stewart's examination of Poston. R. 20. The undersigned cannot determine if the ALJ would have fully credited Dr. Stewart's opinion if he had realized that it was supported by the opinion of Poston's treating physician. In short, because the ALJ failed to realize that the medical statement regarding Poston's mental work limitations was completed by Poston's treating physician, it is impossible for the Court to determine whether the ultimate decision on the merits of Poston's claim is rational and supported by substantial evidence.

**(B)  The ALJ's evaluation of Poston's Mental Health Therapist**

Poston attended therapy with a mental health therapist, Minnie Harrell, for two and a half years. Because Harrell is a licensed mental health counselor, under applicable

11

Administration regulations, she is treated as an "other source" and not as an "acceptable medical source." 20 C.F.R. §§ 404.1527(a), 416.927(a); *see also* S.S.R. 06–03p (S.S.A. Aug. 9, 2006). As such, the ALJ was required to consider the opinion, but he was not required to afford her opinion any particular weight or credit over the contrary opinions of acceptable medical sources. 20 C.F.R. §§ 404.1527(f); 416.927(f); S.S.R. 06–03p (S.S.A. Aug. 9, 2006); *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784 (11th Cir. 2016) (stating that an ALJ is not required to give opinions from other medical sources controlling weight over the opinions of acceptable medical sources but is required to consider opinions of other medical sources); *Thomas o/b/o J.T.C. v. Berryhill*, No. 3:16CV443-SRW, 2018 WL 1583149, at *4 (M.D. Ala. Mar. 30, 2018) (recognizing that an ALJ is required to consider opinion evidence supplied by other medical sources and "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case") (citations omitted).

In March 2017, Ms. Harrell opined that Poston's symptoms "would likely cause significant problems in a work setting." R. 786. Although the ALJ discussed at length Poston's treatment records from Ms. Harrell, he failed to acknowledge Ms. Harrell's opinion regarding Poston's ability to function in a workplace setting, and he failed to explain the weight assigned to her opinion. As such, the Court is unable to follow his reasoning with respect to Ms. Harrell's opinion and its effect on the case. Additionally, as with Dr. Stewart's opinion, the Court cannot determine if Ms. Harrell's opinion would have

been assessed differently if the ALJ had realized that it was supported by the opinion of Poston's treating physician, which prohibits the Court from determining whether the ALJ's ultimate decision is supported by substantial evidence.

## VII. CONCLUSION

Because the Court finds that the above two errors require remand, there is no need to consider the other asserted claims of error. *Watts v. Colvin*, No. CIV.A. 14-00052-N, 2014 WL 6747155, at *6–7 (S.D. Ala. Dec. 1, 2014) (citations omitted). Based on the foregoing, it is hereby

ORDERED that the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Plaintiff is cautioned that this Memorandum Opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process in which the ALJ must engage and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

A separate judgment will issue.

DONE this 31st day of October, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE